# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| JAMES ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3-09-0095 |
| | ) | JUDGE HAYNES |
| | ) | |
| VANDERBILT UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## M E M O R A N D U M

Plaintiff, James Anderson, a Georgia citizen, filed this action under 28 U.S.C. § 1332, the federal diversity statute, against the Defendant, Vanderbilt University, a not for profit corporation chartered under Tennessee law and registered to do business in Tennessee. Plaintiff asserts Tennessee law claims of negligence, breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, equitable estoppel and false light invasion of Plaintiff's privacy. Plaintiff's claims arise from the Defendant's alleged violations of its written procedures and representations in wrongfully finding the Plaintiff guilty of an Honor Code violation. The Plaintiff seeks damages and injunctive relief reversing the finding of guilt, removing the grade "F" in the Physics 119A course and removal of any reference to an Honor Code violation from his transcript.

Before the Court is the Defendant's motion for summary judgment (Docket Entry No. 19) and Plaintiff's motion for partial summary judgment (Docket Entry No. 29). In its motion, the Defendant contends, in sum, that the undisputed facts demonstrate that the Defendant followed its procedures and that the evidentiary standard of guilt was met to find Plaintiff guilty of his second Honor Code Violation and to warrant his expulsion.

In his motion, Plaintiff asserts the Defendant breached its contract: (1) by allowing Plaintiff's case to be heard by an Honor Council panel that had knowledge of Plaintiff's prior Honor Code violation and the outcome of Plaintiff's first Honor Council Hearing; (2) by allowing a professor to testify that certain marks and notes on Plaintiff's test were evidence of premeditated copying; (3) by allowing the Chair of the Appellate Review Board to introduce inaccurate statistical evidence that was never presented during the disciplinary hearing; and (4) by allowing the Chair of the Appellate Review Board to dismiss most of Plaintiff's petition without allowing the entire panel's consideration.

For the reasons set forth below, the Court concludes that the Defendant's motion for summary judgment should be granted and Plaintiff's motion for partial summary judgment should be denied.

## I. FINDINGS OF FACT[1]

Plaintiff, James Anderson, was an undergraduate student at Vanderbilt University. (Docket Entry No. 34, Defendant's Response to Plaintiff's Statement of Undisputed Facts, at ¶ 1). On December 12, 2007, Plaintiff took the final test for the semester in the Physics laboratory course, Physics 119A, taught by Professor Kenneth Schriver. (Docket Entry No. 37, Plaintiff's Response to Defendant's Statement of Undisputed Facts, at ¶¶ 38, 43). Erin Perez, a teaching assistant for this

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Under the applicable law, there are not any material factual disputes, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

course, was sitting almost directly in front of Plaintiff, facing Plaintiff. Id. at ¶ 39; Docket Entry No. 34 at ¶ 13.

To discourage cheating, Professor Schriver advised the class at the beginning of the semester that he would prepare and distribute different versions of each test. Id. at ¶ 40. The questions on each version of the test would be the same, but different values might be used in the question or the answers would appear in a different order. Id. at ¶ 41. The test consisted of 15 multiple choice questions, and answers were recorded by the student on a separate answer sheet. Id. at ¶ 45.

After the test, Perez advised Professor Schriver that while grading the papers, she had noticed that Plaintiff answered just one of the fifteen test questions correctly, but that thirteen of his fifteen answers were identical to the answers of Crystal Reyelts, a student who sat at the same table as Plaintiff during the test and who was the top student in the class. Id. at ¶ 46. The only answers on Plaintiff's test that were different from Reyelts's answers were questions 10 and 11, and the only answer which Plaintiff got correct was question 15 which, coincidentally, had the same answer on both his and Reyelts's versions of the test. Id. at ¶¶ 47-48. Plaintiff conceded that he did not have a "firm understanding" of the material covered during the three weeks prior to the test, and that he "did practically no preparation for this exam." Id. at ¶ 44.

Based on the similarity of the tests, notations on Plaintiff's test, and what Schriver regarded as a very low probability of students with different versions having 13 of the 15 answers the same, Professor Schriver reported the matter to the Honor Council. Id. at ¶ 49. The Honor Council charged Plaintiff with a violation of the Honor Code by receiving unauthorized aid on the Physics laboratory test, but Plaintiff denied the charge. Id. at ¶ 50. Plaintiff had been previously convicted

of an Honor Code violation during the 2006 spring semester. (Docket Entry No. 21, Anderson Deposition at pp. 30-32).

On January 16, 2008, the Honor Council considered Plaintiff's case. (Docket Entry No. 37 at ¶ 56). The Honor Council found Plaintiff guilty by a vote of 10-2 and imposed a penalty of failure in the class and expulsion from the university by a vote of 11-1. Id. at ¶ 59. Plaintiff subsequently appealed to the Appellate Review Board. Id. at ¶ 62.

When Plaintiff enrolled at Vanderbilt, he received a copy of the University's student handbook. Id. at ¶ 2. The "Introduction" to the student handbook states:

> The information provided and the regulations and policies outlined in this handbook are not intended to be all-inclusive and do not constitute a contract. The University reserves the right at any time to add to, modify, or revoke any of the regulations and policies contained in this handbook without notice.

Id. at ¶ 3.

The student handbook contains detailed information regarding the Vanderbilt Honor System, and Plaintiff understood that the Honor Code applied to tests and examinations. Id. at ¶ 4. The student handbook provides that, if a student receives a failure in a course related to an Honor Code violation, "the original failure will continue to appear on the student's transcript (although nothing will appear on the transcript indicating that the failure was attributable to an Honor Council conviction)." Id. at ¶ 126.

The Honor Code is enforced by the Defendant through an Honor Council, composed of Vanderbilt students sitting on a panel that conducts the hearings under written procedures. (Docket Entry No. 34 at ¶ 3). Each panel has a presiding officer who serves as the leader of deliberations, comparable to a jury foreman. Id. at ¶ 6.

When an alleged violation of the Honor Code is reported to the Honor Council, the Honor Council appoints two investigators to investigate the facts relevant to the case. (Docket Entry No. 37 at ¶ 8). The Honor Council also assigns a student advisor to the student accused of an Honor Code violation to explain the procedures of the Honor Council regarding investigations and hearings and the penalties that may be assigned. Id. at ¶ 9. Student advisors, however, do not function as "lawyers" or advocates for the student, but advise the student of the procedures, answer questions about those procedures and also provide support. Id. at ¶ 10. After interviewing witnesses and collecting relevant documents, the investigators prepare a report that is provided to the Honor Council and the accused student. Id. at ¶ 11.

If the Honor Council President determines that there is sufficient evidence of a violation, then a hearing will be scheduled. Id. at ¶ 13; (Docket Entry No. 29, Ex. 1). The Honor Council hearing panel first conducts a "pre-hearing," during which it considers the investigators' summary of the case and the evidence included in the investigative report, and decides whether to proceed with a full hearing. Id. at ¶ 14. The Honor Council may also question the investigators, but the investigators are expressly prohibited from offering their opinions when they testify during an Honor Council hearing. Id. at ¶ 15.

If the Hearing Panel votes to proceed to hearing, the accuser testifies first, and the president invites the accuser to give a general account of the events in question. Id. at ¶ 16. Members of the Honor Council hearing panel can question the accuser. Id. at ¶ 17. After the accused student is sworn as a witness, the President "asks the student to state his or her account of the events in question." Id. at ¶ 21. After the accuser's testimony, the Honor Council hearing panel may hear

testimony from other material witnesses and one character witness. Id. at ¶ 19. A character witness cannot express an opinion on the alleged offense. Id. at ¶ 20.

At that time, "discrepancies in testimony, contradictions, and specific charges are brought forth." (Docket Entry No. 29, Exhibit 1 at p. 26). After the Honor Council concludes its questioning, the investigators may question the accused to clarify points that may have been obscured. Id. Proof that a student is guilty must be "clear and convincing to the Honor Council." (Docket Entry No. 37 at ¶ 23). The presumptive penalty for a second Honor Code violation is expulsion. Id. at ¶ 25.

Daniel Swinton, assistant dean of students and director of student conduct and academic integrity, served as an advisor to the Honor Council and liaison between the Honor Council and Dean of Students' office. Id. at ¶ 26. Swinton assisted members of the Council in understanding the policies and procedures as well as their duties and responsibilities. Id. at ¶ 27. Swinton did not attend hearings or participate in deliberations and did not vote on guilt, innocence, or penalty determinations. Id. at ¶ 28.

A student found guilty by the Honor Council may appeal the decision to the Appellate Review Board ("ARB"). Id. at ¶ 29. The grounds for appeal of an Honor Council decision to the ARB are:

> (1) insufficient evidence to support the decision;
> (2) harshness of sanctions sufficient to show an abuse of discretion of the original hearing authority;
> (3) procedural irregularities sufficient to affect the decision;
> (4) new evidence that was not reasonably available to be presented to the original hearing authority, the introduction of which may reasonably be expected to affect the decision.

Id. at ¶ 30. The Procedures of the Appellate Review Board provide:

Upon receipt of the petition, the Chair will review the petition (including all supporting evidence provided by the Petitioner) to determine whether it, when considered in the light most favorable to the Petitioner, sets forth a basis sufficient to provide the relief sought by the Petitioner. If the Chair determines that the petition does not set forth a basis sufficient to provide the relief, the Chair will dismiss the petition (or such parts of the petition that the Chair has determined do not set forth a basis sufficient to provide relief). The Chair's decision is final.

If the Chair determines that the petition (or parts of it) does set forth a basis sufficient to provide the relief, the Chair will forward a copy of the petition to the original hearing authority with instructions to respond to it (or such parts of the petition that the Chair has determined set forth a basis sufficient to provide relief).

(Docket Entry No. 29, Exhibit 17 at 3-4).

The ARB Chair selects a six-person panel, consisting of three faculty members and three students from the appointed members of the ARB, to consider the appeal. (Docket Entry No. 37 at ¶ 33). The panel's consideration is based solely on the record, i.e., "[t]he petition, the response from the original hearing authority, any other supplemental responses, and the evidence presented to the original hearing authority, such as test papers, audio or video tapes or proceedings of the original hearing authority, summary of witness testimony, etc." (Docket Entry No. 29, Exhibit 17 at 4-5).

After reviewing the record, the ARB panel decides whether to affirm, modify, or reverse the decision of the original hearing authority. Id. at 5. "In cases where there has been a procedural error on the part of the original hearing authority . . . the case should be remanded back to the original hearing authority with instructions." Id.

The ARB's Procedures specifically provide that it is "not the role of the Board to substitute its judgment for the judgment of the original hearing authority if there is a reasonable basis for the original hearing authority's decision." (Docket Entry No. 37 at ¶ 36). The ARB's Procedures also provide that "deference should be given to the judgment of the original hearing authority which had the opportunity to hear the witnesses and to judge the veracity of those witnesses. The Board should

not alter the decision of the original hearing authority unless there is a showing that the decision of the original hearing authority is clearly erroneous and cannot be supported reasonably by the evidence." Id. at ¶ 37.

Professor Mark Ellingham, the ARB's Chair. considered Plaintiff's appeal and, after reviewing Plaintiff's appeal, realized that Plaintiff's case was similar to another Honor Council case on appeal involving a student in a different section of Professor Schriver's Physics 119a-b and became concerned about possibly broader cheating in the different sections. (Docket Entry No. 29, Exhibit 6). In an April 11, 2008 email, Ellingham shared his concern about the possibility of large scale cheating with Swinton, Steve Caldwell (Associate Dean of Students), and John Callison, Vanderbilt's Senior Deputy General Counsel. (Docket Entry No. 37 at ¶ 65). Ellingham's concern was whether students in the class might have improperly obtained copies of the tests or the answer keys. Id.

The ARB remanded Plaintiff's case to the Honor Council for a new hearing based on a procedural irregularity, "namely that Mr. Anderson should have been given the opportunity to state his account of the events in question at the beginning of his testimony" before having to respond to questions from the Honor Council. Id. at ¶ 67. The ARB noted that the "new hearing should have a panel consisting of members and a presiding officer different from those at the hearing on January 16, 2008." Id. at ¶ 68.

According to Ellingham, the ARB expected the new presiding officer to have a copy of the ARB's decision to remand the case for a new hearing to ensure that the same issue that led to remand

would not recur.  (Docket Entry No. 23, Ellingham Affidavit at ¶ 7).[2]  According to Swinton, the Honor Council's practice over the years is for only the hearing panel's presiding officer to be aware of a previous Honor Council conviction and the presiding officer only discloses that information if the panel first finds the student guilty.  (Docket Entry No. 29, Exhibit 22 Swinton Deposition at pp. 76-78).

Plaintiff's counsel also requested that Plaintiff's prior honors conviction not be revealed to the Honor Council members conducting the second hearing.  (Docket Entry No. 34 at ¶ 50).  In an email, John Callison, Vanderbilt's Assistant General Counsel, responded that "[r]eferences in the investigators' packet regarding [Plaintiff's] . . . previous Honor Council conviction will be removed. Information relative to his previous conviction will be brought forth only if he is convicted . . . ." (Docket Entry No. 29, Exhibit 7).

Matthew Specht, the presiding officer in the second hearing, disclosed to Swinton that he knew Plaintiff through mutual friends and was generally aware that Plaintiff had a prior Honor Code violation during his freshman year.  (Docket Entry No. 37 at ¶ 83).  Specht had not previously served as a presiding officer, but Swinton advised Caroline Nebhan, Honor Council First Vice President, and Abby Stufflebam, Honor Council President, that in his view, "Matt could do it, though we would need to script it for him exactly."  Id. at ¶¶ 76-78.

---

[2]Plaintiff asserts that Ellingham's affidavit contradicts testimony where he answered "yes" to whether he "felt it was important that the second panel not have knowledge about what went on in the first hearing," see Docket Entry No. 29, Ellingham Deposition at p. 61, and should be stricken. The Court disagrees as the question pertained to only the *panel,* and Ellingham's affidavit was an elaboration of his knowledge of the type of information that a presiding officer would be entrusted with in conducting a rehearing.

The presiding procedures guide that had recently been revised by Stufflebam provided a step-by-step format for the presiding officer to follow when conducting an Honor Council hearing. Id. at ¶ 80. Based on the ARB ruling in Plaintiff's case, Stufflebam incorporated in her revisions to the Presiding Procedures guide instructions to allow the accused student to make an uninterrupted presentation of his or her defense. Id. at ¶ 81. Specht was fully apprised of the result of the first hearing, met with Stufflebam about the case, and reviewed the Appellate Review Board decision addressing the first hearing. (Docket Entry No. 34 at ¶ 56). Specht testified that he was unaware of Ellingham's April 11, 2008, email. (Docket Entry No. 35, Specht Deposition at pp. 57-59).

In an August 15, 2008, email, Specht stated to Nebhan the following:

> I just met with Daniel [Swinton] and we decided that we will not tell the panel members that [it] is a rehearing or a second offense. If possible, could you remove anyone from the panel who might know that it's a second offense or tell them not to say anything until we reach the penalty phase of the panel?

(Docket Entry No. 29, Exhibit 12). Nebhan asked prospective panel members whether they knew Plaintiff and based upon the responses, Nebhan was confident that no one on Plaintiff's re-hearing panel had prior knowledge of Plaintiff's January hearing or of his freshman year Honor Code violation. (Docket Entry No. 37 at ¶¶ 97-98).

During the second hearing on August 20, 2008, some of the evidence included Professor Schriver's testimony that in his opinion, the notations on Plaintiff's exam were evidence of "premeditated copying" and his conclusion that "the likelihood of a student answering 13 of 15 questions incorrectly and identically to another revision of the test is vanishingly small." (Docket Entry No. 34 at ¶ 62, Docket Entry No. 37 at ¶ 112; Docket Entry No. 29, Exhibit 15). Plaintiff's explanations of his answers on the examination were essentially that he "guessed" or "randomly guessed" on some answers and that on other answers, he guessed after employing various

methodologies to eliminate perceived incorrect answers. (Docket Entry No. 34 at ¶ 73; Docket Entry No. 21, Exhibits 13, 14, 17, 25).

The second panel found Plaintiff guilty by a unanimous vote[3] and imposed the penalty of failure in the class and expulsion from the university. (Docket Entry No. 37 at 114). Plaintiff appealed, alleging only insufficiency of evidence as the "basis of appeal." Id. at ¶¶ 117-119. In his appellate brief, Plaintiff presented a number of arguments that did not address the sufficiency of the evidence, and Dr. Charles Brau, the ARB Chair dismissed those arguments and forwarded to the ARB only Section D of Plaintiff's appeal, that addressed his sufficiency of the evidence argument. Id. at ¶¶ 120-121.

Before the appeal was decided, Professor Brau sent a written statement to the other Board members in which he asserted that the statistical likelihood of Plaintiff having 13 out of 15 answers the same as the other student's was "less than one in two billion." (Docket Entry No. 34 at ¶ 68). Brau is not an expert in statistics and admitted that experts in statistics would likely hold different opinions on the statistical likelihood depending on what variables were considered and what facts were assumed, such as how the problems were resolved. Id. at ¶¶ 74-75. Brau calculated the odds merely by dividing 1 by the number of choices for a particular question and then multiplying the fractions for all 13 questions. Id. at ¶ 75.

On November 20, 2008, the ARB affirmed the Honor Council's decision. Id. at ¶ 77. Plaintiff was expelled from Vanderbilt at the end of the Fall 2008 semester, but Plaintiff's transcript does not reflect that his failure in Physics 119A was attributable to an Honor Council conviction.

---

[3]Prior to Plaintiff's second hearing, Vanderbilt students in the College voted to amend the Honor Council By-Laws to reduce the size of an Honor Council hearing panel from twelve members to six members. (Docket Entry No. 24, Affidavit of Stufflebam at ¶ 3).

Id. at ¶¶ 124, 127. The only mention of Plaintiff's Honor Council case appears at the end of the transcript, where it states: "Honor Council expulsion from Vanderbilt University effective January 1, 2009." Id. at ¶ 131.

## II. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational

trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of `demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving

party then `must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby).  Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably

favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).

Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a

party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1.    Complex cases are not necessarily inappropriate for summary judgment.

2.    Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3.    The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4.    This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5.    A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6.    As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.    The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.     The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9.     The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10.     The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

In this diversity action, Plaintiff asserts state law claims of negligence, breach of contract, breach of the duty of good faith and fair dealing, promissory estoppel, equitable estoppel, and false light invasion of privacy that are governed by Tennessee law.

### A. Plaintiff's Contract Claims

A breach of contract claim has three elements: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract; and (3) damages caused by the breach of the contract. Life Care Ctrs. of America, Inc. v. Charles Town Assocs. Ltd. Partnership, LPIMC,

Inc., 79 F.3d 496, 514 (6th Cir. 1996) (applying Tennessee Law). "In Tennessee, the common law imposes a duty of good faith in the performance of contracts." Wallace v. National Bank of Commerce, 938 S.W.2d 684, 686 (Tenn. 1996). "However, a claim based on the implied covenant of good faith and fair dealing is not a stand alone claim; rather, it is part of an overall breach of contract claim. Lyons v. Farmers Ins. Exch., 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000). While every contract contains an implied covenant of good faith and fair dealing, there must be a contract to contain the covenant." Jones v. Lemoyne-Owen College, --- S.W.3d ----, 2009 WL 1941515, at *10 (Tenn. Ct. App. July 8, 2009) (citation omitted); accord, German v. Ford, 300 S.W.3d 692, 709 (Tenn. Ct. App 2009) (finding an enforceable contract and therefore an implied covenant of good faith and fair dealing); Hermosa Holdings, Inc. v. Mid Tennessee Bone and Joint Clinic, P.C., No. M2008-00597-COA-R3-CV, 2009 WL 711125, at *9 (Tenn. Ct. App. March 16, 2009) ("Although lack of good faith may be an element or circumstance in an action for breach of contract, Tennessee courts do not recognize lack of good faith, standing alone, as an actionable tort.") (citing Solomon v. First American National Bank, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989)).

In Atria v. Vanderbilt Univ., 142 Fed. Appx. 246 (6th Cir. 2005), the Sixth Circuit address the effect of the Defendant's student handbook:

> Though Vanderbilt's Student Handbook, which states that its policies "are not intended to be all-inclusive and do not constitute a contract," is not an express written contract, . . . its provisions may be enforced in Tennessee if it creates an implied contract. . . . This court, applying Tennessee's law, has stated that "the student-university relationship is contractual in nature although courts have rejected a rigid application of contract law in this area." Doherty v. Southern College of Optometry, 862 F.2d 570, 577 (6th Cir. 1988). Catalogs, manuals, handbooks, bulletins, circulars and regulations of a university may help define this contractual relationship.

Id. at 255 (citations omitted).

In analyzing the relationship as a contractual one, "courts have adopted different standards of review when educators' decisions are based upon disciplinary versus academic criteria-applying a more intrusive analysis of the former and a far more deferential examination of the latter." Doherty, 862 F.2d at 577. Here, Plaintiff's claim involves a disciplinary action. See Atria, 142 Fed. Appx. at 255.

Plaintiff asserts that the Defendant breached its contract and its duty of good faith and fair dealing by allowing Plaintiff's case to be heard by an Honor Council panel that had knowledge of Plaintiff's prior Honor Code violation and the outcome of Plaintiff's first Honor Council Hearing. In sum, Plaintiff asserts that (1) the representations and promises made by the Defendant's counsel in response to the request that Plaintiff's prior conviction would not be revealed to the Honor Council members conducting the second hearing either constituted a contract or Plaintiff detrimentally relied on this promise; and (2) implicit in the ARB's instruction for the new hearing was that no one on the panel, including the presiding officer, would have knowledge about the outcome of the first hearing.

An enforceable contract must have "a meeting of the minds, must be based upon sufficient consideration, and must be sufficiently definite to be enforced." Peoples Bank of Elk Valley v. ConAgra Poultry Co., 832 S.W.2d 550, 553 (Tenn. Ct. App. 1991) (citing Johnson v. Central National Ins. Co. of Omaha, 210 Tenn. 24, 34-35, 356 S.W.2d 277, 281 (1962)). "Consideration exists when a party does something that he or she is under no legal obligation to do or refrains from doing something which he or she has a legal right to do. Consideration may be either a benefit to the promisor or a detriment to or obligation upon the promisee." Bratton v. Bratton, 136 S.W.3d 595, 602 (Tenn. 2004) (citations omitted).

The Defendant contends that Callison's email to Plaintiff's counsel did not constitute a contract. The Court agrees. Here, there was not adequate consideration. Therefore, there was not an enforceable contract established nor an implied contract of good faith and fair dealing.

Assuming a contract existed, Plaintiff asserts that the Defendant breached its contract and its duty of good faith and fair dealing by allowing Professor Schriver to testify that certain marks and notes on Plaintiff's test were evidence of premeditated copying. Plaintiff asserts that according to the Student Handbook an accuser is confined to providing only "a general account of the events in question," thereby prohibiting Professor Schriver from giving opinion testimony. The Court disagrees.

The Student Handbook specifically prohibits investigators and character witnesses from giving opinion testimony. There is not any such restriction as to the accuser, material witnesses or the accused. Further, the Handbook provides that the Honor Council may question the accuser. The accuser is allowed to explain his reasons for why he or she believes certain marks and notes constitute cheating or evidence of "premeditated copying." This claim is without merit.

Plaintiff asserts that the Defendant breached its contract and its duty of good faith and fair dealing because the Honor Council's August 20, 2008, decision was not supported by clear and convincing evidence. The Court concludes that Plaintiff has failed to present sufficient evidence to support this claim and is improperly asking the Court to substitute its judgment for the Honor Council's judgment.

Plaintiff asserts that the Defendant breached its contract and its duty of good faith and fair dealing by allowing the Chair of the ARB to dismiss most of Plaintiff's petition without allowing the entire panel to consider it. Plaintiff asserts that Brau dismissed portions of Plaintiff's appeal that

pertained to procedural matters because Plaintiff did not specifically state that he was also asserting "procedural irregularities" as an additional basis of appeal. Plaintiff contends that this a hyper-technical construction and Brau did not have authority under the appellate procedures to dismiss parts of his petition on this basis. Plaintiff also contends that Brau dismissed another portion of Plaintiff's appeal as not being relevant, although that section included information and argument about the standard of proof.

Although Brau's decision may have been hypertechnical, the Defendant's procedures granted the ARB's Chair the discretion to act as a gatekeeeper. Plaintiff's reliance on Atria, 142 Fed. Appx. at 255, is misplaced, because there a conflict existed between the Student Handbook and the published ARB Procedures, and the Sixth Circuit found that this conflict created a material fact as to whether Vanderbilt substantially complied with its own rules. Here, the record reflects that Brau substantially complied with the Defendant's procedures. Accordingly, this claim fails.

Plaintiff asserts that the Defendant breached its contract and its duty of good faith and fair dealing because the ARB did not reverse the Honor Council's August 20, 2008, decision on grounds of insufficiency of evidence and procedural irregularities, consisting of Specht's knowledge of the circumstances surrounding and the outcome of the first Honor Council hearing and Professor Schriver's testimony as to certain marks and notes being evidence of premeditated copying.

As stated previously, Plaintiff's appeal was limited to insufficiency of evidence and according to ARB Procedures, Brau as the gatekeeper, properly dismissed Plaintiff's claims that were based on procedural irregularities. Further, for the reasons previously discussed, Specht's prior knowledge and Schriver's testimony were not breaches of the Defendant's practices and procedures.

As to Plaintiff's claim that Plaintiff's conviction was not supported by "clear and convincing" evidence and the ARB did not reverse the Honor Council's August 20, 2008, decision on grounds of insufficiency of evidence, the Court concludes that the factual record does not support Plaintiff's claim and that Plaintiff is improperly seeking the Court to substitute its judgment for the unanimous decision of the ARB.

Plaintiff asserts that the Defendant breached its contract by allowing Brau, the ARB Chair, to introduce for consideration by the ARB's members inaccurate statistical evidence that was never presented during the hearing. Plaintiff asserts that Brau's opinion that the statistical likelihood of Plaintiff having 13 out of 15 answers the same as the other student's was "less than one in two billion" was prejudicial as Plaintiff was unable to address the issue and that Brau's opinion did not take into account Plaintiff's explanation that he employed methodologies to eliminate certain choices. The Defendant contends that Brau did not introduce any new or improper statistical evidence, but instead used a basic probability calculation in an attempt to evaluate and analyze the evidence before them.

The evidence before the ARB was that "the likelihood of Plaintiff answering 13 of 15 questions incorrectly and identically to another revision of the test was "vanishingly small." Plaintiff does not contend that any statistical calculation, regardless of the methodology used, renders this testimony inaccurate. Moreover, in his petition for appeal, Plaintiff admitted that he knew the odds were "extremely low that [his] incorrect answers would coincide with 13 of the correct answers on another version of the same exam," and Plaintiff sought to explain "in quantifiable terms, using the analogy of someone winning the lottery" why his answers were the same. (Docket Entry No. 21,

Exhibit 2 at 40). Thus, the Court concludes that the Defendant substantially complied with the ARB's Procedures. Accordingly, this claim fails.

Plaintiff asserts that the Defendant breached its contract and its duty of good faith and fair dealing by including a notation on Plaintiff's transcript indicating that he was found guilty of an Honor Code violation. The Student Handbook states that, if a student receives a failure in a course, "the original failure will continue to appear on the student's transcript (although nothing will appear on the transcript indicating that the failure was attributable to an Honor Council conviction)." Nothing on Plaintiff's transcript indicates that his failure in Physics 119A was attributable to an Honor Council conviction. Accordingly, Plaintiff's claim has no merit.

Plaintiff asserts that the Defendant breached its contract and its duty of good faith and fair dealing by "scripting" the outcome of the second hearing. This allegation is conjecture. The evidence reveals that the context of the term "script" in Swinton's email was used in reference to Specht having not previously served as a presiding officer, Stufflebam revised the Presiding Procedures guide in accordance with the ARB ruling, and the other five panel members had no prior knowledge about the outcome of Plaintiff's January hearing or his prior conviction. Plaintiff has not presented evidence of actual bias to overcome the presumption of honesty and integrity to which a disciplinary committee is entitled. McMillan, 1992 WL 168827, at *2; Atria, 142 Fed. Appx. at 256. Accordingly, this claim is without merit.

Plaintiff asserts that at the Second Honor Council hearing, the Defendant breached its contract and its duty of good faith and fair dealing by introducing evidence and suggesting theories of guilt based on Ellingham's April 11, 2008, email. Specht testified that he was unaware of this issue raised by Ellingham or his email. Plaintiff has not presented any evidence that this "theory"

23

was presented to any of the panel members and that they relied on that theory as evidence of guilt. See McMillan, supra. Accordingly, this claim fails.

Plaintiff asserts that the Defendant breached its contract and its duty of good faith and fair dealing because the Honor Council's January 16, 2008, decision was unsupported by clear and convincing evidence. Plaintiff is improperly seeking the Court to substitute its judgment for the Honor Council's judgment. Moreover, because Plaintiff's conviction was set aside and was given a new hearing, this claim is moot.

Plaintiff asserts that the Defendant breached its contract and its duty of good faith and fair dealing because the ARB did not reverse the Honor Council's January 16, 2008, decision for insufficiency of evidence. According to its procedures, the ARB properly remanded Plaintiff's case based on a procedural error with instructions. Therefore, the ARB was not required to make a sufficiency of evidence determination. Accordingly, this claim fails.

## B. Promissory Estoppel Claim

To establish a claim of promissory estoppel, a plaintiff must demonstrate that "1) a party made a promise which the promisor should reasonably have expected to induce the action or forbearance of the promisee; 2) the promise does induce such action or forbearance; and 3) injustice can be avoided only by enforcement of the promise." Atria, 142 Fed. Appx. at 256 (citing Alden v. Presley, 637 S.W.2d 862, 864 (Tenn. 1982)). However, "[t]o support a claim for promissory estoppel . . . a plaintiff must show that his reliance caused an economic detriment." Id. at 256-57 (citing Alden, 637 S.W.2d at 864). This economic detriment must be substantial. Calabro v. Calabro, 15 S.W.3d 873, 879 (citing Alden, 637 S.W.2d 864).

Moreover, "the promise upon which the promisee relied must be unambiguous and not unenforceably vague." Id. "Tennessee does not liberally apply the doctrine of promissory estoppel. To the contrary, it limits application of the doctrine to exceptional cases." Barnes & Robinson Co., Inc. v. OneSource Facility Services, Inc., 195 S.W.3d 637, 645 (Tenn. Ct. App. 2006). "Such exceptional cases are found only where defendant's conduct is akin to fraud." Sparton Technology, Inc. v. Util-Link, LLC, 248 Fed. Appx. 684, 689 (6th Cir. 2007) (citing Shedd v. Gaylord Entertainment Co., 118 S.W.3d 695 (Tenn. Ct. App. 2003)).

Callison stated that references to Plaintiff's previous Honor Council conviction would be removed from the investigators' packet and his previous conviction would be revealed only if Plaintiff were convicted. The undisputed facts show that only Specht, as the presiding officer, knew of the prior conviction, while the other panel members did not. Plaintiff did receive a benefit from the promise as five of the six voting members were unaware of his prior conviction until the penalty phase, where the presumptive penalty for a second Honor Code violation is expulsion. Further, Plaintiff has failed to show he has suffered a substantial economic detriment and his evidence on this contention is too speculative. (Docket Entry No. 36, Plaintiff's Declaration at ¶ 5 stating that because of his expulsion his entry into the workforce was delayed a year). Accordingly, this claim fails.

As to ARB's letter stating that a new hearing should consist of a different panel and presiding officer, this letter did not address how much or what type of information should be relayed to the presiding officer. The evidence reveals that the five panel members did not have any prior information concerning the first hearing. Ellingham's expectation was that the presiding officer would be entrusted with the investigative packet, the outcome of the hearing to avoid the same

procedural error from reoccurring and Plaintiff's prior conviction in conducting the penalty phase, if necessary. Swinton testified that the presiding officer being apprised of a prior conviction was standard procedure. Further, there is no evidence that Specht acted inappropriately or in any prejudicial way while conducting the hearing. Specht even instructed Nebhan to screen any potential panel member to see if anyone had any knowledge about Plaintiff's prior hearing. "In the university setting, a disciplinary committee is entitled to a presumption of honesty and integrity absent a showing of actual bias." McMillan v. Hunt, No. 91-3843, 968 F.2d 1215, 1992 WL 168827, at *2, (6th Cir. July 21, 1992); Atria, 142 Fed. Appx. at 256. While Plaintiff asserts that there are other ways to apprise the presiding officer of a prior conviction, the evidence reveals that the Defendant complied with the ARB's instructions and its own procedures. Accordingly, the Court concludes Plaintiff's proof cannot support a judgment on his promissory estoppel claim.

Plaintiff asserts related claims of equitable estoppel based on Defendant's alleged failure to comply with the Student Handbook provisions and the ARB Procedures. For these claims, Plaintiff relies on the same contentions for his breach of contract claims. For the reasons previously discussed, Plaintiff's general estoppel claims fail.

### C. Plaintiff's Negligence Claim

Plaintiff asserts that the "Defendant owed a duty of reasonable care to Plaintiff in conducting the Honor Council hearing, the appellate process, and in otherwise considering the validity of the charges brought against Plaintiff; the evidence available as to Plaintiff's guilt or innocence; and the procedures for establishing Plaintiff's guilt or innocence." (Docket Entry No. 16., Amended Complaint at ¶ 88).

Plaintiff's specific assertions are that the Defendant was negligent by (1) scripting the outcome of the first Honor Council hearing; (2) introducing evidence to the Honor Council panel members and suggesting theories of guilt to the panel members before the second hearing took place; (3) allowing the new presiding officer and other panel members who had prior knowledge of Plaintiff's prior conviction and/or the circumstances and outcome of the first Honor Council hearing, to serve on the panel; (4) allowing Professor Schriver to testify that certain scribbling and notations appearing on Plaintiff's exam were evidence of "premeditated copying;" (5) finding Plaintiff guilty of an Honor Code violation after both hearings; (6) refusing to accept and consider most of Plaintiff's Petition for Appeal; (7) failing to reverse the Honor Council's findings of guilt after each hearing; and (8) including a notation on Plaintiff's transcript indicating that he was found guilty of an Honor Code violation.

A plaintiff must establish five elements to prove a negligence claim: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, cause." McClenahan v. Cooley, 806 S.W.2d 767, 774 (Tenn. 1991).

Plaintiff's claims are based on the same facts, and the nature of Plaintiff's claims are contractual, as he relies on the Defendant's alleged breaches of the Student Handbook provisions and the ARB procedures. For the reasons discussed in addressing Plaintiff's breach of contract claims, Plaintiff's negligence claims are without merit.

### D. Privacy Claims

Plaintiff asserts a claim of false light invasion of privacy. (Docket Entry No. 16, Amended Complaint at ¶ 91). Liability for the tort of false light invasion of privacy exists where one "gives

publicity to a matter concerning another that places the other before the public in a false light" whereas "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." West v. Media Gen. Convergence, Inc., 53 S.W.3d 640, 643-44 (Tenn. 2001) (citing Restatement (Second) of Torts § 652E (1977)). Although truth of facts published is not an absolute defense, the tort involves the publication of false information. Id. at 645 n.5. "'Publicity' . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Secured Financial Solutions, LLC v. Winer, No. M2009-00885-COA-R3-CV, 2010 WL 334644, at *4 (January 28, 2010 Tenn. Ct. App.) (citing Restatement (Second) of Torts § 652D).

Presumably, Plaintiff bases this tort claim on the notation of the Honor Code violation at the bottom of his transcript. The notation on Plaintiff's transcript is neither false nor places Plaintiff in a false light. Plaintiff has not shown that the Defendant has published his transcript to the public at large. Accordingly, this claim fails.

Accordingly, the Defendant's motion for summary judgment (Docket Entry No. 19) should be granted, and Plaintiff's motion for partial summary judgment (Docket Entry No. 29) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 26th day of May, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge